UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE CORPORATION,<br><br>　Plaintiff,<br><br>　v.<br><br>PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD,<br><br>　Defendant. | Civil Action No. 25-70 (JEB) |

**MEMORANDUM OPINION AND ORDER**

The Public Company Accounting Oversight Board instituted disciplinary proceedings against John Doe Corp., a New York-based accounting firm, for violations of Board audit standards. See ECF No. 1 (Compl.), ¶¶ 36, 39. In response, Doe Corp. has filed this lawsuit, alleging that PCAOB's funding, appointments, and disciplinary process violate Articles I and II of the Constitution, as well as the Fifth and Seventh Amendments. Id., ¶¶ 3–7. It now moves to proceed under a pseudonym, arguing it would incur significant harm if it were revealed that it was now subject of the Board's otherwise nonpublic disciplinary process. See ECF No. 2 (Mot.) at 1–2. As Plaintiff has not made the detailed showing required to overcome the presumption in favor of disclosure, the Court will deny the Motion. See LCvR 40.7(f) (providing that Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint"); see also Doe v. PCAOB, 2024 WL 3954189, at *1 (D.D.C. Aug. 2, 2024) (denying parallel motion in similar case).

1

I. **Legal Standard**

Generally, a complaint must identify the plaintiff. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. V. U.S. Sent'g Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020). As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test. Id. (quoting In re Sealed Case, 931 F.3d at 96). That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

**II.   Analysis**

This is not the first time a plaintiff has sought to proceed pseudonymously in this type of suit against the Board.  In fact, in Doe v. PCAOB, this Court considered the aforementioned factors and concluded that pseudonymity was not warranted.  See 2024 WL 3954189, at *2–5.  Here, it again finds that this Plaintiff has not met its burden to show that its privacy interests outweigh the public's presumptive and substantial interest in learning its identity.  The Court will address each of the five factors in turn before moving to Doe Corp.'s extracurricular arguments.

   A.  Factor 1

First, disclosure of Plaintiff's identity will not reveal any information of a "sensitive [or] highly personal nature."  In re Sealed Case, 971 F.3d at 326 (quoting In re Sealed Case, 931 F.3d at 97).  The Complaint reveals no "intimate or sensitive personal information" of the kind "traditionally recognized under this factor, such as sexual activities, reproductive rights, [and] bodily autonomy."  Doe v. Rogers, 2023 WL 1470007, at *2 (D.D.C. Feb. 2, 2023) (quoting Doe v. Bogan, 542 F. Supp. 3d 19, 23 (D.D.C. 2021)).

Although the harm Plaintiff alleges does not fall into this category, Doe Corp. nonetheless maintains that it can satisfy the first factor because disclosure would result in "near certain reputational and financial harm."  Mot. at 6.  These concerns are indeed relevant to this factor.  See Doe v. Lieberman, 2020 WL 13260569, at *3 (D.D.C. Aug. 5, 2020) (weighing whether disclosure of allegations of professional misconduct against plaintiff would limit her ability to practice medicine).  But mere "speculative and unsubstantiated claims of harm" cannot justify pseudonymity.  John Doe Co. No. 1 v. CFPB, 195 F. Supp. 3d 9, 22 (D.D.C. 2016) (quotation marks omitted).  To be sure, courts have varied in how much detail they require: at one end of the spectrum are completely conclusory allegations, which must be rejected.  See,

e.g., Doe v. Power, No. 23-2637, ECF No. 4 (Order) at 3–4 (D.D.C. Sept. 14, 2023) (rejecting as conclusory plaintiff's assertion that "[r]etaliatory actions related to this case have . . . impacted [her] career . . . [and] financial opportunities"). At the other end are detailed declarations supported by the prior experiences of the plaintiffs or others. See Bird v. Barr, 2019 WL 2870234, at *5 (D.D.C. July 3, 2019) (deeming most plaintiffs' declarations sufficiently substantiated but rejecting one plaintiff's claims for being "too speculative," unlike concerns arising from different plaintiff's "prior experience").

Plaintiff's allegations fall somewhere in the middle. It provides quotes from two studies and a sworn declaration from a Co-Chairman of the corporation. See Mot. at 7–8. One quote is from a case study from an auditor who faced sanctions from the Board, claiming that "the disclosure of Board investigations against an audit firm before they are resolved could unfairly damage that firm's reputation, if it is ultimately cleared of wrongdoing." Id. at 7. The other comes from a paper published in The Accounting Review, which found that "the 2007 PCAOB disciplinary order against Deloitte imposed significant actual costs on the firm" such as "an increase in the firm's existing client loss rate . . . and a drop in the client gain rate." Id. at 8. The Co-Chairman's sworn declaration adds further credence to Plaintiff's case, as it touches on the "extremely competitive" nature of the industry and states:

> Even if a company has no known accounting failures, investors may regard the company's financial statements as less reliable if they were audited by a firm subject to investigation or disciplinary action by the PCAOB. That, in turn, may cause the audit client's investors to devalue the company. Because audit clients understand that cause and effect, they may be less likely to retain or engage an auditor known to be a target of the PCAOB.

ECF No. 2-1 (Doe Corp. Co-Chairman Decl.), ¶ 5. The sworn declaration additionally explains that after Plaintiff's predecessor organization settled an enforcement action with the Board in

2019 — leading to publicity — there was a noticeable decrease in potential clients soliciting the firm.  See id., ¶¶ 7–8.

      The Court, however, finds these statements wanting.  Consider, by comparison, the allegations of harm at issue in John Doe Co. No. 1.  There, the plaintiffs provided two sworn declarations.  See 195 F. Supp. 3d at 21.  The court found that the first was sufficiently specific: it attested that the declarant's industry was extremely competitive and required access to capital, and that being publicly identified as an investigation target would cause private investors and banks to "withdraw their capital access and invest elsewhere."  Id. at 21–22.  This conclusion was buttressed throughout with concrete examples, like colleagues losing credit lines after being charged with regulatory violations or minor crimes, or the plaintiff's own experience losing credit access after being improperly named in a civil lawsuit.  Id. at 22.  The second declaration, which the court found insufficient, merely asserted that disclosure of the ongoing investigation could fracture the plaintiffs' business relationships, which "could lead to substantial economic harm."  Id.  The declaration loosely identified the mechanism for potential damage but did not more specifically explain why harm was likely to result.  Id. ("Assertions . . . about what 'could' happen, without any elaboration, explanation, or support, are inherently speculative.").

      Plaintiff's sworn declaration is a blend of the two.  The declaration states that the field is competitive and that success in the industry is predicated on the firm's ability to retain and attract new clients, which looks like the first declaration in John Doe Co. No. 1.  Id. at 21.  The expected consequences of public disclosure of the Board's investigation, however, are framed more speculatively than the aforementioned declaration and are cushioned with "likely," Doe Corp. Co-Chairman Decl., ¶¶ 4–5, ultimately landing Plaintiff's allegations back into the box of the second John Doe Co. No. 1 declaration.  The most concrete piece of evidence proffered —

5

that Plaintiff's organizational predecessor observed a decrease in new clients following a Board enforcement action against the organization, id., ¶¶ 7–8 — is unpersuasive here, as proceeding pseudonymously is appropriate only where the suit itself would expose highly sensitive information that could be damaging. Since any settlement between the Board and a firm would be public regardless, any resulting damage should not weigh in favor of appearing under a pseudonym in related, but distinct, proceedings. This request thus resembles the impermissible "use of a pseudonym merely to avoid the annoyance and criticism that may attend any litigation." In re Sealed Case, 931 F.3d at 97.

The two statements pulled from industry publications, additionally, do not square with Plaintiff's current situation. The first is an overly speculative conclusion about ongoing Board investigations. See Mot. at 7. The second points to a situation in which an auditor had faced a disciplinary order from the Board and there was resulting economic fallout. Id. at 8. Neither statement involves a suit being brought and the results stemming from that publicity.

The Court therefore finds the first factor to parallel that in the prior Doe v. PCAOB case and concludes that it weighs against granting the Motion. See 2024 WL 3954189, at *2–3.

B.  Factors 2–5

The second and third factors further support disclosure. Because Plaintiff is an accounting firm, it will not face physical or mental retaliation for bringing suit, nor is any minor implicated by the case. Whether these factors are "inapplicable," Doe v. Merrill Lynch, 2016 WL 10844617, at *1 (D.D.C. Apr. 28, 2016), or instead weigh "in favor of disclosure," id., they do not support the use of a pseudonym. See Doe v. PCAOB, 2024 WL 3954189, at *3.

Nor does the fourth factor, even assuming that PCAOB is part of the Government for purposes of this litigation. "[T]here is a heightened public interest when an individual or entity

6

files a suit against the government" that disfavors pseudonymity. In re Sealed Case, 971 F.3d at 29; see also Doe v. PCAOB, 2024 WL 3954189, at *3–4. Where a plaintiff requests individualized relief against a government defendant, however, this factor can favor pseudonymity. See e.g., Doe v. Blinken, No. 24-1629, ECF No. 3 (Order) at 5 (D.D.C. June 11, 2024) (collecting cases). But Plaintiff's challenge is not grounded in its specific circumstances or limited to individualized relief. It is, rather, exactly the kind of matter that "intensifie[s]" the "public interest in transparency and openness" because the Plaintiff's constitutional claims could "alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward." In re Sealed Case, 971 F.3d at 329–30; see also Doe v. McKernan, 2024 WL 1143932, at *3 (D.D.C. Feb. 23, 2024). That it requests an injunction only for itself, see Compl. at 33, is insufficient to clear this hurdle. The petitioner in In re Sealed Case also requested relief for itself, but the court nonetheless rejected pseudonymity because its arguments would clearly apply beyond its case. See 971 F.3d at 329.

The fifth factor, however, lends support to Plaintiff since Defendant is aware of its identity. See Mot. at 10.

As all but the last factor favors disclosure, the Court sees no basis to deviate from its prior approach in Doe v. PCAOB. See 2024 WL 3954189, at *5.

C. Other Arguments

Plaintiff's additional arguments falling outside of the five-factor test do not move the needle. Its primary contention is that its ongoing disciplinary proceeding before the Board — and the fact that it is the subject of such a proceeding — is confidential under the Sarbanes-Oxley Act. See Mot. at 11–13. The relevant statutory provision reads as follows:

> Except as provided in subparagraphs (B) and (C), all documents and information prepared or received by or specifically for the Board,

7

> and deliberations of the Board and its employees and agents, in connection with an inspection under section 7214 of this title or with an investigation under this section, <u>shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court</u> or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act (5 U.S.C. [§] 552a), or otherwise, unless and until presented <u>in connection with a public proceeding or released in accordance with subsection (c)</u>.

15 U.S.C. § 7215(b)(5)(A) (emphases added).

Subsection (c), in turn, authorizes the Board to conduct disciplinary proceedings to determine whether sanctions are warranted, sets out the nature of the sanctions available, and outlines their corresponding procedures. Notably, it states that "[h]earings under this section shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearing." Id. § 7215(c)(2). Once a sanction has been imposed, subsection (d) requires that the penalty and the name of the sanctioned individual be made public. Id. § 7215(d)(1)(C). The Court in Doe v. PCAOB, however, held that § 7215(b)(5)(A)'s reference to a "public proceeding" is distinct from the "nonpublic hearings" under subsection (c). As a result, the "public proceeding" at which protected documents and information may be disclosed, as mentioned in the last clause of § 7215(b)(5)(A), includes federal judicial proceedings, and the Court may therefore disclose otherwise confidential information (such as Plaintiff's name) in this case. See 2024 WL 3954189, at *4–5.

Plaintiff, as a last resort, asks the Court to reconsider its previous Opinion in Doe v. PCAOB in favor of interpreting the entire "unless and until" clause as qualified by "in accordance with subsection (c)." Mot. at 13. The Court, however, stands by its previous interpretation of the Act: the "or" separating the two phrases demonstrates that public proceedings are different from the disciplinary procedures in subsection (c) and suggests that the

8

clause should be read as disjunctive.  See Doe v. PCAOB, 2024 WL 3954189, at *5; see also SEC v. Goldstone, 301 F.R.D. 593, 671–72 (D.N.M. 2014) (same).

### III. Conclusion

The Court accordingly ORDERS that:

1. Plaintiff's [2] Motion to Proceed Under Pseudonym is DENIED;

2. Within fourteen days of the Court's Order, Plaintiff shall file a Notice advising the Clerk of the Court whether it wishes to proceed with filing the Complaint on the public docket using its real name, and, if so, shall also file its [2] Motion on the public docket; and

3. If Plaintiff does not file such Notice within fourteen days, the Clerk is directed to terminate the case.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  January 27, 2025